Daniel S.  Szalkiewicz, Esq.
Cali P. Madia, Esq.
VERIDIAN LEGAL P.C.
23 W. 73rd Street, Suite 102
New York, NY 10023
*Attorneys for the Creditor R.S.*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In Re:<br><br>    CLAYTON GUPTA,<br><br><br>                                    Debtor. | Chapter 7 Case No. 26-10585-pmm |
| R.S.,<br><br>                                    Plaintiff,<br><br>    -against-<br><br>Clayton Gupta<br>1229 Chestnut Street, 1516<br>Philadelphia, PA 19107<br><br><br>                                    Defendant. | Adversary Case No.<br><br>Bankruptcy Judge |

**COMPLAINT TO DETERMINE THAT SPECIFIED DEBT IS NONDISCHARGABLE**

Plaintiff, R.S.[1] ("R.S." or "Plaintiff") by and through the undersigned counsel, as and for

her Complaint against Defendant Clayton Gupta ("Gupta" or "Defendant"), respectfully alleges

as follows:

---

[1] The Supreme Court, Kings County has provided Plaintiff with permission to proceed using her initials.

## PRELIMINARY STATEMENT

1.      Nonconsensual pornography, sometimes called revenge porn, or image-based sexual abuse is a crime and civil tort which occurs when a person shares a victim's intimate content with third parties.  While the intimate content – pictures and/or videos depicting certain private body parts and/or sexual acts – is typically consensually recorded, the nonconsensual aspect of the offense comes into play with regard to the dissemination of the content.

2.      Typical perpetrators of nonconsensual pornography are disgruntled former romantic partners interested in inflicting pain on their exes in retaliation for ending a relationship.  Unlike keying a car or toilet papering a house, nonconsensual pornography is often specifically designed to eviscerate a victim's sense of privacy and safety, irreparably alter their reputation and relationships with recipients, and permanently damage their mental state.  In this case, that is just what Gupta accomplished when anonymously text messaged Plaintiff a photoshopped intimate image of herself, disseminated Plaintiff's intimate image online hundreds of times, shared the details of Plaintiff's rape, sought out third parties who knew Plaintiff, requested that third parties film themselves masturbating to Plaintiff's intimate images and share the videos online, and called upon third parties to write brutal rape fantasies which tended to end in Plaintiff's violent murder.

3.      Not only did Defendant contact Plaintiff directly with one of the images he had photoshopped of her, many of his posts used her true first and last name, confirming that he wanted Plaintiff to know about the harm he was doing to her online.

4.      As Defendant intended, his actions have had a lasting impact on R.S. emotionally.

5.      Plaintiff filed a Summons and Complaint against Defendant in the Supreme Court, County of Kings on September 29, 2023.

6. While Defendant has largely avoided dealing with the case against him, forcing Plaintiff to bring a motion to compel Defendant to cooperate with discovery on October 25, 2024, it seems Defendant has been busy attempting to avoid financial responsibility for his actions as well – in this case by initiating a Chapter 7 bankruptcy proceeding.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334, and 29 U.S.C. § 1132(e)(1) and (f). This adversary proceeding relates to the above-captioned case under Chapter 7 of the Bankruptcy Code, which is pending in the United States Bankruptcy Court for the Southern District of New York.

8. This adversary proceeding is a "core" proceeding to be heard and determined by the Court pursuant to 28 U.S.C. § 157(b)(2).  Plaintiff consents to entry of final orders and judgment by the Court.

9. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## THE PARTIES

10. Plaintiff R.S. is a citizen of the County of Kings, State of New York.

11. Defendant Clayton Gupta is a resident of the County of Philadelphia, State of Pennsylvania.

## RELEVANT FACTUAL BACKGROUND

12. R.S. and Gupta dated in R.S.'s senior year of high school.  While they broke up when R.S. left home for college, the two maintained a close relationship and intermittently reconnected romantically, as their academic schedules permitted.

13.     R.S. viewed Gupta as her best friend during this time, sharing with him the intimate details of her life, including an instance in college where she had been raped.  When, in Winter 2020, Plaintiff received a text message from a stranger with a true photograph of her which had been photoshopped to make her appear nude, Gupta was among the first individuals – after the police – Plaintiff contacted to verbalize her panic and distress.  Defendant would later admit that it was him who sent her the picture.

14.     Two years later, Plaintiff received a message on her professional Instagram account from a woman asking her if she was aware there were naked photographs of her online. The woman sent Plaintiff several of the intimate images she was referencing.

15.     Plaintiff recognized the images immediately as images Defendant had taken of her while they were together.  With further investigation, she would later come to learn that Defendant had uploaded 26 unique intimate images of her online without her consent; Defendant uploaded each image multiple times, resulting him sharing an intimate image of her no fewer than 326 times.

16.     Gupta further called upon strangers to "degrade [his] girl" by masturbating to her, indicating "Bonus is you have her saved or recognize her. I love when men own her nude body online," "Wanna share my slut with people who might know her," "Looking for someone to RP as a girl I know, Jerk to my girl, Set her as your phone background, Send to her friends and let me know what they say" and "Jerk to my girl, tell me how she's being exposed."

17.     Gupta additionally posted Plaintiff's images on "WWYD Torture, Rape, Snuff" thread, a thread designed to accumulate written posts about how strangers would torture, rape, and kill those pictured.  As the thread indicates, users did just that, writing that they would "rape her ragdoll body" and other disgusting statements about how they would harm Plaintiff.  Other

threads attracted similar responses, with strangers writing how they would date rape her, leave her to be repeatedly raped by gangs of drug-addled concert-goers, or rape her on boat before throwing her overboard to die.

18.     If that were not enough, Defendant also shared details about Plaintiff's rape on multiple threads, causing strangers to speculate how much Plaintiff loved being raped and "Hope they barebacked her and left her filled."  Other posts Defendant made included an image of Plaintiff along with "shes already been raped twice. Do your worst to this whore" and an image of Plaintiff along with "How many cocks you think this whore has bounced on? Hint: She's been raped at least once."

19.     The clear purpose of Defendant's acts was to inflict pain upon R.S. and cause others to view and comment on her naked body without her permission or consent.  That Gupta messaged Plaintiff a photoshopped image of her naked and specifically sought to share her images with men who knew her confirms his wish that Plaintiff know about what he was doing. Plaintiff's response to being messaged with the intimate content confirms Gupta knew sharing such content would cause her intense emotional distress.

20.     Since Defendant disseminated the intimate content, Plaintiff has suffered from extreme anxiety and despair.  Defendant's actions have caused Plaintiff to question her judgment in trusting an individual who not only disseminated her intimate content but also cruelly shared information about her rape and called upon others to imagine and write about raping and murdering her.

21.     Plaintiff has experienced many sleepless nights and has sought the help of a therapist to cope with the betrayal and widespread dissemination of her content.

22.     Each day Plaintiff lives with the oppressive knowledge that unknown numbers of individuals have seen her fully naked; shared images/videos of themselves masturbating to her images; written detailed stories about how they would degrade, rape, and murder her; rated her appearance; and speculated that she enjoyed being raped.

23.     Plaintiff experiences constant anxiety that individuals known to her have seen her intimate content.  She has withdrawn from activities which once brought her joy.

24.     On September 29, 2023, R.S. filed a summons and complaint against Gupta.  A copy of the documents is annexed hereto as **Exhibit 1**.

25.     On March 15, 2023 Judge Leon Ruchelsman signed an order to show cause permitting Plaintiff to proceed using her initials.  A copy of this document is annexed hereto as **Exhibit 2**.

26.     Defendant has not opposed Plaintiff proceeding using her initials.

27.     The complaint alleges four causes of action against Rivera: (1) Violation of New York City Administrative Code §10-180, (2) Violation of Civil Rights Law § 52-b, (3) Intentional Infliction of Emotional Distress, and (4) Violation of 15 USC §6851.

28.     Defendant filed an Answer on February 9, 2022.  A copy of his Answer is annexed hereto as **Exhibit 3**.

29.     On October 25, 2025, Plaintiff filed a motion to strike Defendant's answer for failure to comply with discovery.  While Defendant did not respond to the motion, the court decline to grant Plaintiff's request for relief, instead ordering Defendant to comply with the preliminary conference order.  A copy of this Order is annexed hereto as **Exhibit 4**.

30.     The matter is currently marked disposed to due to the parties submitting a proposed compliance conference order past the court's timeframe for submission prior to conference.  A copy of the e-mail to the court is annexed hereto as **Exhibit 5**.

31.     While Defendant consented to stipulating the restore the case in the event the proposed order was rejected and the matter was marked disposed, Defendant has since filed for bankruptcy, staying the case and preventing Plaintiff from having it restored.  A copy of the relevant e-mails is annexed hereto as **Exhibit 6**.

32.     Additionally, Plaintiff has deposed Defendant who, when questioned about his posting of Plaintiff's intimate imagery online, invoked his right to remain silent.  A copy of an excerpt of the transcript is annexed hereto as **Exhibit 7**.

<u>**COUNT I**</u>
<u>**Liquidation of Debt**</u>

33.     Plaintiff incorporates by reference herein and reallege all the averments contained in the above paragraphs of this Complaint.

34.     Defendant filed his Voluntary Petition under Chapter 7 prior to the Supreme Court of the State of New York entering a judgment on his debt.

35.     The filing of the Petition under Chapter 7 stayed the state court action.

36.     Plaintiff has sustained damages based on Defendant's conduct in an amount as yet undetermined, plus interest, attorney's fees and costs.

37.     On his Schedule E/F, Defendant has listed the debt as a nonpriority unsecured claim.  Defendant did not indicate whether the claim was disputed.

38.     In Part 4, Defendant indicated that, within one year of filing for bankruptcy, he had not been a party in any lawsuit, court action, or administrative proceedings.

39.     The debt rightfully belongs to Plaintiff R.S.  To the extent Veridian Legal P.C. is an unsecured creditor, it is based on the fact the applicable statutes permit a victim of revenge porn to obtain attorney fees.

40.     Plaintiff requests that this Court refer the matter to the Supreme Court to determine the proper sum of that nondischargeable debt within the course and scope of this adversary matter

## COUNT II
### Nondischargeability of Debt – 11 U.S.C. § 523(a)(6)

41.     Plaintiff incorporates by reference herein and reallege all the averments contained in the above paragraphs of this Complaint.

42.     Section 523(a)(6), 11 U.S.C. §523 (a)(6) provides, in pertinent part, that a discharge under sections 727 or 1141 does not discharge an individual debtor from any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity....

43.     "An injury is willful and malicious under the Code only if the actor purposefully inflicted the injury or acted with substantial certainty that injury would result" Conte v. Gautam (In re Conte), 33 F.3d 303, 305 (3d Cir. 1994).

44.     "With regard to the malice component, 'no showing of specific malice is required' in order to satisfy this prong of the test" with courts holding that, "[t]o require specific malice would "place a nearly impossible burden on a creditor . . . . [and] restrict § 523(a)(6) to the small set of cases where the debtor was foolhardy enough to make some plainly malevolent utterance expressing his intent to injure his creditor." Harris v. Kamps (In re Kamps), 575 B.R. 62, 73 (Bankr. E.D. Pa. 2017).

45.     "[T]he 'wrongfulness' component of malice serves as one of the safeguards against misuse of the Bankruptcy Code[,]" and the analysis should be considered with the fundamental policy underlying the bankruptcy discharge: of providing a fresh start only to the "honest but unfortunate debtor." Olsen v. Dingess (In re Dingess), 670 B.R. 412, 425 (Bankr. D. Del. 2025).

46.     More so, "the element of malice may be found either upon a finding of actual malevolence or ill will, or upon a finding of aggravated, socially reprehensible conduct sufficient to justify an imputation of malice to the debtor" (In re Bressler, 387 BR 446, 454 [SDNY 2008]).

47.     A court may consider circumstantial evidence in determining what the debtor may have known when taking the action that produced the injury (See Id.).

48.     Defendant's conduct falls squarely within the §523(A)(6) definition of "willful" and "malicious."

49.     Defendant admitted to uploading Plaintiff's intimate content and to text messaging Plaintiff a photoshopped intimate image of herself using a fake number (Exhibit 1, ¶¶ 5, 19).  Plaintiff's response to Defendant's text message was clear, she was "freaked out[,]" "uncomfortable[,]" "violated[," and "disturb[ed]"  Copies of the relevant transcript excerpt and text messages are annexed hereto as **Exhibit 8** and **Exhibit 9**.  Defendant listened to Plaintiff's fears, feigned ignorance and even pretended to help her, and then continued to engage in even more egregious conduct online for a period of years. **Id.**

50.     New York City and New York State have outlawed Defendant's actions, and, in 2022, a federal law was passed which recognizes the devastating consequences of nonconsensual pornography by providing for liquidated statutory damages in the amount of $150,000 for instances such as the one here.

51.    Bankruptcy courts have found similar actions to be nondischargable (In re Grossman, 538 BR 34, 40 [ED Cal 2015]).

52.    In In re Grossman, the court found the act of revenge porn both willful and malicious.  The court determined "[u]ploading the video onto the pornography website was self-evidently no accident. In addition, the defendant's acts of identifying the plaintiff by both her maiden and her married names are circumstances indicative of a subjective intent to embarrass and humiliate her, inviting harassment, shaming, stalking, or worse." (Id.).

53.    The Court went on to find that:

> the defendant's animus towards the plaintiff and intent to injure the plaintiff is inherent in his act of labeling the uploaded sex tape with the tag 'ex-girlfriend.' It reeks of revenge and of intention to embarrass and humiliate the plaintiff in a manner that necessarily causes damages by inviting harassment, shaming, stalking, or worse" (Id.).

54.    Defendant also uploaded and sought additional images of Plaintiff using her full name. A copy of the relevant transcript excerpt is annexed hereto as **Exhibit 10**.  In addition, he sought out individuals who knew Plaintiff

55.    Defendant's decision to invoke his right to remain silent speaks for itself.  More, specifically, Defendant was advised by counsel in his deposition that they had discussed "invoking your right to remain silent, can result in an adverse inference against you. Such that, a truthful answer could not be helpful to your interest in a civil case."  Defendant indicated that he understood.  A copy of the relevant transcript excerpt is annexed hereto as **Exhibit 11**.

56.    Defendant invoked his right to remain silent with regard to his use of screen names which had uploaded Plaintiff's content, with regard to his communications with Plaintiff, and with regard to anything even tangentially related to his mass-dissemination of her content

online.  Clearly he understood and was advised that a truthful answer would not be helpful to his interests.

57.     Defendant's actions define aggravated socially reprehensible behavior.

58.     Based on the forgoing, the Court should find that any potential debt to Plaintiff is nondischargeable under 11 U.S.C. § 523(a)(6).

**RESERVATION OF RIGHTS**

59.     Plaintiff repeats and re-alleges the allegations contained in the previous paragraphs of the Complaint as though fully set forth herein.

60.     Plaintiff does not waive and instead specifically reserve all of her rights, claims, and defenses as they pertain to Defendant and to defend against any claims or liens that Defendant may assert.  Plaintiff expressly reserves the right to amend and supplement this Complaint or to commence a new action against Defendant with other claims.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant by entering an order: (1) finding that Defendant is liable for the acts alleged in the Complaint, to wit, (a) Intentional Infliction of Emotional Distress, and (b) Violation of the New York City, New York State, and Federal Revenge Porn Statutes; (2) awarding damages to Plaintiff in an amount to be determined at trial; (3) determining that, pursuant to 11 U.S.C. §523(a)(6), the debts owed by Defendant to Plaintiff arising from the actions complained of in the Complaint are excepted from discharge; (4) awarding the costs of the action to Plaintiff, including reasonable attorneys' fees; and (5) for such other relief as the Court deems just and proper.

Dated:     April 10, 2026
           New York, New York

                          Veridian Legal P.C.

                          /s/Daniel Szalkiewicz
                          By:     Daniel S.  Szalkiewicz, Esq.
                          23 W. 73rd Street, Suite 102
                          New York, New York 10023
                          *Attorneys for Plaintiff*
                          *Pro Hac Vice Admission Pending*